## CHEMICAL DELINTING CO. v. JACKSON et al.
### No. 13391.

United States Court of Appeals Fifth Circuit.

Dec. 14, 1951.

---

124

Milton Yawitz, St. Louis, Mo., Robert H. Bean, Lubbock, Tex., for appellant.

Chas. C. Crenshaw, J. E. Vickers and Buck W. McNeil, all of Lubbock, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH, and STRUM, Circuit Judges.

BORAH, Circuit Judge.

This action was brought by Chemical Delinting Company, against S. B. Jackson, Mrs. S. B. Jackson, Lloyd H. Jackson, Robert L. Jackson, the Cottonseed Process Company and Cottonseed Delinting Company, alleging that the Cottonseed Process Company, as the owner of United States Letters Patents Numbers 1,718,332 [1] and 2,112,159,[2] concerning the delinting of cottonseed, granted to the plaintiff's assignor an interest in the patents and any improvements thereon and the right to exclusive operation thereof in certain described territory. The gravamen of the complaint is that the defendants conspired together to circumvent the license held by plaintiff by offering to sell delinting plants to various persons located in plaintiff's exclusive territory and offering to grant them licenses for the processing and delinting of cotton-

1. Patent No. 1,718,332 is a *process* patent known as the Cloer patent.

2. Patent No. 2,112,159 is an *apparatus* patent known as the S. B. Jackson patent.

seed by the use of the same process as that described in the patents. The complaint alleges irreparable damages and asks for injunctive relief.

Upon the trial of the case before the court without a jury, the facts were fully developed and the court made extensive findings of fact and conclusions of law which may be summarized as follows: On June 25, 1929, United States Letters Patent No. 1,718,332 was granted to Venus U. Cloer, covering a delinting and screening process for selecting and preparing cottonseed for planting purposes. The Cloer patent was thereafter assigned to S. B. Jackson and expired on June 25, 1946, which was prior to the period of time here involved. On March 22, 1938, S. B. Jackson was granted United States Letters Patent No. 2,112,159 on an improvement in apparatus for treating seed, which rested upon a specific method of operation and as finally granted was limited to the single, narrow claim set forth in the margin.[3] Sometime prior to August 22, 1944, S. B. Jackson organized the Cottonseed Process Company and transferred these two patents to it. At all times since its organization, S. B. Jackson or his wife, or both of them, has or have been the principal officer and stockholder of Cottonseed Process Company but the defendants Lloyd H. Jackson and Robert L. Jackson have not been stockholders, officers, agents, or otherwise interested in the company at any time material to this suit. On August 22, 1944, the company granted to plaintiff's assignor, Earle N. Edgington, a license for the exclusive use of the two patents and any improvements thereon in a certain described territory[4] lying generally east of the Mississippi river. Edgington, in turn, transferred the exclusive license to plaintiff, who invested a large sum of money for necessary plant and machinery, built up a market for its delinted cottonseed, and kept up payments of specified royalties which accrued from time to time under the license agreement.

It was found that all of the sales of delinting machines made by any of the defendants, save for one which was made by Lloyd Jackson to Georgia Chemical Delinting Company, have been outside of the territory covered by the license held by plaintiff; that the defendants, Lloyd H. Jackson and Robert L. Jackson, are men capable of inventive achievement and that each has designed a cottonseed delinting machine;[5] that there are certain similarities in the plan and functional operation of the two machines, which may indicate some identity of origin, but whether or not the two brothers worked altogether independently in the creation of their respective machines, neither is the handiwork of S. B. Jackson; that either Lloyd Jackson separately and independently created his ma-

3. The single claim reads as follows: "Apparatus for treating seed or the like comprising a closed casing, and inner chamber in the form of a truncated cone, a rotatable shaft on which the chamber is mounted, a removable closure for the larger end of the chamber rotatable therewith, means extending exteriorly of the casing and connected to the closure for moving the closure axially, the said closure being rotatable with the inner chamber and with relation to the last mentioned means, stuffing boxes in wall of the casing through which the last mentioned means extend for preventing the escape of gas, and means for heating the interior of the casing."

4. The agreement granted to Earle Edgington an exclusive license to operate the processes for which letters patent numbered 1,718,332 and 2,112,159, together with all improvements thereon, were granted, in the following territory: "All of that territory of the United States lying east of the Mississippi River, together with that part of the United States lying west of the Mississippi river, beginning with the south boundary of the State of Missouri, and bounded on the west by the east boundary of Craighead County, Arkansas; thence south on the east line of Craighead County, Arkansas to the south line of Craighead County, Arkansas; thence west along the south line of Craighead County, Arkansas to a point fifty (50) miles west of the Mississippi river; thence south on a line parallel to the Mississippi river and fifty (50) miles in depth from the Mississippi river, and continuing south to the Gulf of Mexico."

5. Both Lloyd and Robert Jackson now have applications for patents pending on their respective machines.

chine and Robert Jackson created his or the original idea of one of the two brothers is reflected in both machines; that the two brothers have been bitterly estranged for a long time; that this feeling has been intensified by Robert Jackson's belief that his brother through artifice gained knowledge of his machine and copied it; and that this personal enmity is such as to rebut any reasonable belief of a conspiracy between them. Moreover, they are determined competitors in making and marketing their respective machines.

It was found in respect to the machine covered by the S. B. Jackson Patent No. 2,112,159, in which appellant has an interest, that the inventive measure of the patent is focused in that part of the claim calling for an inside chamber on a rotating shaft, with a closure on the larger end thereof, which is rotatable therewith, and movable axially back and forth on the shaft, so as to open and close the chamber by manipulation of exterior handles; that neither this nor any other similar structural element is to be found in the Lloyd H. Jackson machine or in the Robert L. Jackson machine; that the Jackson patent embodies a design comprising an outside fixed shell with the inside rotatable chamber in the shape of a truncated cone, ready to be heated by a fluid run in the jacket surrounding the inner chamber; and that none of this design is duplicated in either of the other machines.

The court further found that defendant S. B. Jackson has not solicited or made any sales of delinting machines covered by his patent No. 2,112,159 for installation or use anywhere within the territory specified in the license agreement; that such connection as S. B. Jackson may have had in introducing either of his sons, Lloyd or Robert, to prospective customers for their respective machines or in referring inquirers to them was not motivated by any intent on his part to enter into a conspiracy with either of his sons to bring about sales of their respective machines in derogation of plaintiff's rights as licensee from Cottonseed Process Company; that his acts were more consistent with a paternal interest in Robert and Lloyd than with any theory of a conspiracy between them; and that the evidence was wholly insufficient to establish the existence of any conspiracy between any of the defendants or any combination of defendants to do any act in derogation of any rights granted to Edgington and his assignee, Chemical Delinting Company.

The trial judge concluded that the process patent obtained by Cloer, United States Letters Patent No. 1,718,332, became public property on June 25, 1946; that neither the Robert L. Jackson nor the Lloyd H. Jackson machine constituted any infringement upon the S. B. Jackson patent No. 2,112,-159; that the defendants Robert L. Jackson and Lloyd H. Jackson had and now have the legal right to sell and seek to sell their respective machines in the territory covered in the license granted by Cottonseed Process Company to Earle N. Edgington and assigned to plaintiff, and neither the sale made by Lloyd Jackson to the Georgia Delinting Company nor any other sales which either of the defendants has solicited or made of their respective machines, whether within or without the licensed territory, constituted any infringement of plaintiff's rights under the license agreement. Therefore the trial judge entered judgment in favor of defendants and plaintiff appeals.

■ Contending that the evidence adduced overwhelmingly proved the conspiracy, appellant's principal challenge is leveled at the trial judge's findings of fact. Without setting out any of the voluminous testimony, it is sufficient for us to say on appellant's first point that a careful reading of the record convinces us that the question to be settled is purely factual and appellant has failed to show that the findings of fact are clearly erroneous.

■ Appellant's second point is that the court erred in overruling a motion to reopen proceedings for the introduction of newly discovered evidence. The phrase "newly discovered evidence" refers to evidence of facts in existence at the time of the trial of which the aggrieved party was excusably ignorant. Campbell v. American Foreign S. S. Corp., 2 Cir., 116 F.2d 926,

928. The motion must show that the evidence was discovered since the trial; must show facts from which the court may infer reasonable diligence on the part of the movant; must show that the evidence is not merely cumulative or impeaching; must show that it is material; and must show that such evidence will probably produce a different result. Prisament v. United States, 5 Cir., 96 F.2d 865; Marshall's U. S. Auto Supply v. Cashman, 10 Cir., 111 F.2d 140; F. W. Woolworth Co. v. Seckinger, 5 Cir., 125 F.2d 97. The advertisement listing Cottonseed Delinting Company of Vernon, Texas and Columbus, Mississippi as licensees to *sell* cottonseed delinted by the Cottonseed Process Company's *process* was not in existence at the time of the trial and it is most improbable that this evidence could have produced a different result. The granting or refusing of a motion to reopen proceedings for newly discovered evidence is a matter resting within the sound discretion of the trial court and will be reviewed only for an abuse of discretion. We are not convinced that the denial of the motion constituted an abuse of discretion.

The judgment is

Affirmed.